LINN COUNTY, Iowa; Kenneth A. Schriner, Jean E. Oxley and B. Joseph Rinas, as members of the Linn County Board of Supervisors, et al., Plaintiffs,

v.

CITY OF HIAWATHA, Iowa and City of Hiawatha Board of Adjustment, Defendants.

No. 65852.

Supreme Court of Iowa.

Oct. 21, 1981.

---

Craig A. Kelinson, Asst. Linn County Atty. and Gerald T. Sullivan, Cedar Rapids, for plaintiffs.

Gregory Alan Lewis of Moyer & Bergman, Cedar Rapids, for defendants.

Considered by LeGRAND, P. J., and HARRIS, McCORMICK, ALLBEE, and LARSON, JJ.

ALLBÉE, Justice.

This case is here on certified questions of law from the United States District Court for the Northern District of Iowa, pursuant to chapter 684A, The Code, and division VI of the Iowa Rules of Appellate Procedure. The facts certified to this court may be briefly summarized as follows. In 1979, Linn County purchased a residence in the city of Hiawatha, in a district zoned for single-family dwellings only. The residence was to be used as a group foster home for up to six developmentally disabled children whose families live in Linn County. The purpose of the home would be to provide for the habilitation of certain such children who would benefit from being in a family-type environment close to their real families rather than in a distant institution. The home was to be staffed by a specially trained married couple who would serve as houseparents; one of them would work at another job in the community during the daytime, while the other would remain in the home as a homemaker and nurturer. The children residing there would attend education programs outside the home during the daytime, and would be expected to reside at the home during substantial periods until reaching age eighteen. According to testimony included in the appendix, houseparent aides would come to the home before and after school to provide assistance, and a parttime recreational therapist would also visit during the week.

After both the Hiawatha city council and the city zoning board of adjustment ruled that the house would not constitute a single-family dwelling if used as proposed, this suit was brought in federal court challenging the board's ruling and the Hiawatha zoning ordinance on a number of federal and state constitutional and statutory grounds. The federal court found that it had subject matter jurisdiction of the case because plaintiffs raised federal questions and sought a federal remedy pursuant to 42 U.S.C. § 1983.

Because the answers to several state law questions could be determinative of plaintiffs' claims, and because there appeared to be no Iowa precedent on those issues, the federal court, on its own motion, certified the following questions to this court:

1. Whether a group home with the characteristics set out above is a single family dwelling within the meaning of Section 32.06 of the Hiawatha Municipal Code.

2. Whether a federal district court which has independent subject matter jurisdiction of an action is a court of record for the purpose of reviewing the ruling of a board of adjustment pursuant to Iowa Code Section 414.15.

3. Whether a county is subject to a municipal zoning ordinance in the use of its property to carry out a duty imposed upon it by law.

I.

We will address the second certified question, first, because it deals with jurisdiction.

The federal court has determined that it has federal question jurisdiction over the present controversy pursuant to 42 U.S.C. § 1983 [1] and its jurisdictional counterpart, 28 U.S.C. § 1343(3).[2] Although defendants in their brief challenge the existence of federal question jurisdiction in this case, it is for the federal court to decide whether such jurisdiction exists, not for this court. The question certified requires us to *assume* that federal subject matter jurisdiction exists.

■ We are uncertain as to the federal court's reason for asking this certified question. It is well settled that a federal court has jurisdiction to decide questions of state law which are necessary to the determination of a federal question claim. *See Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 821–23, 6 L.Ed. 204, 224 (1824). In fact, when an application of state law may avoid a federal constitutional question entirely, the federal court has jurisdiction to decide a federal question case solely on state law grounds. *Siler v. Louisville & Nashville Railroad Co.*, 213 U.S. 175, 191, 29 S.Ct. 451, 454–55, 53 L.Ed. 753, 757 (1909). *See generally* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3567 (1975). One of the very purposes of the certification procedure is to provide an optional means for the federal court to ascertain state law in such cases when the law is unclear.

■ The instant case presents state law questions concerning the applicability of a municipal zoning ordinance to a county, and the meaning of a particular zoning ordinance. The answers to one or both of those questions appear to be necessary to the federal court's determination of plaintiffs' federal constitutional claims. Therefore, under the authorities cited above, the federal court has jurisdiction to decide those questions.

■ It is true that the federal court's determination of the state law questions in this case would necessarily entail a review of the board of adjustment's decision. In the Iowa courts, at least, such review is governed by section 414.15, The Code, which provides:

> Any person or persons, jointly or severally, aggrieved by any decision of the board of adjustment under the provisions of this chapter, or any taxpayer, or any officer, department, board, or bureau of the municipality, may present to *a court of record* a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. Such petition shall be presented to the court within thirty days after the filing of the decision in the office of the board.

(Emphasis added.) A state legislature, however, has no power to either expand or restrict the jurisdiction of a federal court. When federal subject matter jurisdiction exists, a litigant does not need the permission of a state legislature to sue in federal court. That being the case, it is irrelevant whether the Iowa legislature intended to include federal courts in the term "court of record" in section 414.15. Even if it had *not* intended to include federal courts, the statute could have no effect on a federal court's existing jurisdiction to review a board of adjustment decision when neces-

---

1. 42 U.S.C. § 1983 provides in pertinent part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. 28 U.S.C. § 1343 provides in part:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
. . . .
   (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States[.]

sary to decide a case properly based on federal question or diversity jurisdiction.[3]

## II.

We next address the question of whether the foster home in this case is a single-family dwelling within the meaning of the Hiawatha Municipal Code. That code defines a single-family dwelling as "[a] building designed for or occupied exclusively by one (1) family." § 32.03, Hiawatha Municipal Code. "Family" is defined as "[o]ne or more persons occupying a dwelling and living as a *single housekeeping unit*, as distinguished from a group occupying a boarding house, or hotel as herein defined." *Id.* (emphasis added). Thus, the key to whether the developmental foster home is a single-family dwelling lies in a determination of whether the persons residing there would live as a "single housekeeping unit." It is noteworthy that the ordinance does not require any kind of biological or legal relationship among members of a "family," and places no limit on the number of persons that may be included within a "single housekeeping unit."

In the findings of fact certified to this court, the federal judge states that the group home "will operate as a single housekeeping unit." Plaintiffs contend the statement is a finding of fact which is binding on this court; defendants, on the other hand, argue that this court is free to make its own determination on that point, because the statement is either a conclusion of law or one of mixed law and fact. We need not decide whether the statement is binding because, in any event, we reach the same conclusion as did the federal court.

▮ The fact that Hiawatha's code defines "family" in terms of a "single housekeeping unit" distinguishes it from numerous cases decided by other courts in which the term "family" was either undefined or more restrictively defined by the applicable ordinance. *See generally* Annot.,

71 A.L.R.3d 693, 705–11, 719–25 (1976). Where a zoning ordinance has expressly defined the meaning of the term "family," the stated definition is controlling. *Planning and Zoning Commission v. Synanon Foundation, Inc.*, 153 Conn. 305, 311, 216 A.2d 442, 444 (1966). Therefore, we will focus on cases where the ordinance defined "family" in terms of a "single housekeeping unit."

The case that appears to be most directly in point is *Oliver v. Zoning Commission*, 31 Conn.Supp. 197, 326 A.2d 841 (1974). The ordinance in that case defined "family" as "[o]ne or more persons occupying the premises as a single housekeeping unit, as distinguished from a group occupying a boarding house, lodging house, club, fraternity or hotel." *Id.* at 205, 326 A.2d at 845. Under that definition, which is almost identical to the one in the Hiawatha ordinance, the court concluded that a group home consisting of up to ten retarded adults, with a specially trained married couple as houseparents, constituted a "family." The court said: "It is not the mutual relationship between the occupants of the dwelling, but its use 'as a single housekeeping unit' that controls, and that is what is contemplated by the state under the local supervision or surrogate paternalism of the houseparents." *Id.*

In another case, *Township of Washington v. Central Bergen Community Health Center, Inc.*, 156 N.J.Super. 388, 383 A.2d 1194 (1978), the applicable zoning ordinance defined "family" as "[a]ny number of individuals living together as a single housekeeping unit and using certain rooms and housekeeping facilities in common." *Id.* at 413–14, 383 A.2d at 1206. The case involved a transitional home for five women who had previously been in a mental institution. The women were to pay their proportional share of the rent and household expenses, and were to share in household

---

**3.** We further note that the availability of state court review pursuant to section 414.15 does not mean that plaintiffs here were required to exhaust their state court remedies before going into federal court. When relief is sought under

section 1983, as here, there is no requirement that a plaintiff exhaust state administrative or judicial remedies. *Steffel v. Thompson*, 415 U.S. 452, 472–73, 94 S.Ct. 1209, 1222, 39 L.Ed.2d 505, 522 (1974).

chores such as cooking and cleaning. Rent and expenses would be paid by each resident from a combination of governmental subsidies and wages earned in work-training programs. *Id.* at 404, 383 A.2d at 1202. The court observed that "the duties and responsibilities of the occupants in ... maintaining a household ... cannot be distinguished from those performed by other home dwellers in the community," and concluded that "[t]here is nothing in the operation of the residence which is suggestive of other than its use as a 'single housekeeping unit.'" *Id.* at 418–19, 383 A.2d at 1209.

Defendants argue that the foster home in this case would not constitute a single housekeeping unit because the developmentally disabled children who would live there "cannot themselves cook their own meals or otherwise maintain the household." This argument is without merit. Many families contain children who cannot or do not perform those tasks, yet this does not mean such a family does not constitute a single housekeeping unit. As in most families, the children residing at the foster home would presumably perform those household duties, if any, that their individual abilities permit. In this regard, operation of the foster home would be indistinguishable from that of other single-family homes in the same zoning district.

Defendants also contend that the foster home would come within the definition of a "boarding house" and therefore could not be a single-family dwelling. The Hiawatha ordinance defines a boarding house as "[a] building other than a hotel where, for compensation and by arrangement lodging, meals, or lodging and meals are provided for three (3) or more persons not transients." § 32.03, Hiawatha Municipal Code.

Testimony in the appendix indicates that the children residing at the foster home would be eligible for Social Security benefits that would cover the cost of maintaining them at the home. Defendants, while conceding that the mode of payment is indirect, apparently believe the term "compensation" in the definition of "boarding house" is broad enough to encompass those government benefits. We disagree.

Bearing in mind that zoning restrictions must be strictly construed in favor of the free use of the property, *Jersild v. Sarcone*, 260 Iowa 288, 296, 149 N.W.2d 179, 185 (1967), we observe that the "compensation" paid by a boarding house resident to the owner constitutes the *primary* purpose for the operation of a boarding house. By contrast, the primary purpose of the foster home is to provide habilitation for developmentally disabled children, and the Social Security payments are merely a means of making it possible for the home to carry out that purpose. Furthermore, residents of a boarding house normally do not interact as a family, and they contract to receive nothing more than meals and lodging in return for the compensation which they themselves pay to the owner. On the other hand, the residents of the foster home would seek to emulate family life, and through their interaction with the houseparents and with one another, the children would receive benefits beyond mere lodging and meals. In addition, the payments here would not be made directly by the residents themselves but through government funds which are apparently available because of the special needs of these children.

Therefore, we hold that a group foster home having the characteristics described in the record certified to us is a single-family dwelling within the meaning of the Hiawatha Municipal Code and is not a boarding house. Our resolution of this issue makes it unnecessary to answer the third certified question.

The clerk is directed to proceed in accordance with Iowa R.App.P. 458.

CERTIFIED QUESTIONS ANSWERED.