ST. LOUIS UNION TRUST COMPANY, Plaintiff-Respondent,

v.

TIPTON ELECTRIC COMPANY and Wetterau, Incorporated, Defendants-Appellants,

No. 42869.

Missouri Court of Appeals, Eastern District, Division Two.

June 8, 1982.

Robert C. Jones and Harold A. Tzinberg, Clayton, for plaintiff-respondent.

Julius H. Berg, Mark D. Hirschfeld, Clayton, for defendants-appellants.

SIMON, Judge.

Tipton Electric Company and Wetterau, Incorporated, appeal from the entry of a permanent injunction by the Circuit Court of St. Louis County. The trial court, after making findings of fact and conclusions of law, entered a judgment in favor of St. Louis Union Trust Company enjoining Tipton from operating its retail store located in the Central Park Shopping Center in Alton, Illinois. Appellants contend the trial court erred in concluding that Tipton violated restrictive covenants in its lease with St. Louis Union Trust Company's predecessor in interest, Charles Kahn. Specifically, appellants contend the trial court erred in concluding that: (1) Tipton's principal use of its store was as an appliance store; (2) Central had an exclusive privilege selling certain items in the Central Park Shopping Center; (3) the restrictive covenants in the leases were legal; and (4) Tipton violated the restrictive covenants. Appellants also contend the trial court erred in awarding attorney fees. We agree and accordingly, we reverse the judgment of the trial court.

The essential facts of this case are undisputed. In the late 1960's, Central Hardware purchased eleven acres of undeveloped property along the Belt Line on the north side of Alton, Illinois. Central erected a 65,000 square foot retail store for itself. Adjacent to this building Central built a 25,000 square foot building which Central envisioned as a supermarket or drug store. The development was called the Central Park Shopping Center. The Central Hardware retail store opened in 1968 and continued to operate at the time of trial. In May of 1968 Central entered into a twenty year lease with Allied Supermarkets for the adjacent store. This lease included several restrictive covenants. Subsequently, Central sold Central Park Shopping Center to Charles Kahn and then leased back the Central Hardware store. At the same time Central assigned all of its rights under the Central-Allied lease to Kahn.

Allied's Central Park Shopping Center supermarket venture was short-lived. In fact, between 1968 and 1978 four additional retail grocery stores, all successors under the original Central-Allied lease, occupied the store adjacent to Central in the Central Park Shopping Center. In September of 1978 the last of these, Stephenson Foods, Incorporated, assigned all its rights and interests under the Central-Allied lease to Tipton. Kahn, and after his death his successor, St. Louis Union Trust, brought this suit against Tipton alleging that Tipton was maintaining an appliance store in the Central Park Shopping Center in violation of the terms of the Central-Allied lease. In its conclusions of law, the trial court found that Tipton was violating the Central-Allied lease in two respects: first, the trial court found that Tipton was offering for sale merchandise in contravention of exclusive rights granted to Central; and second, the trial court found that the principal business of Tipton was the operation of a store offering appliances for sale, contrary to the terms of the additional rider to said lease. Based upon its findings and conclusions, the trial court entered a judgment permanently enjoining Tipton from maintaining and operating its Central Park store so long as Tipton was offering for sale refrigerators,

ranges, washers, dryers, televisions, freezers, air conditioners, stereos and microwave ovens. The trial court further ordered Tipton to remove all of these items from its store.

Since the relevant facts are undisputed in this case, our decision hinges on the interpretation of the Central-Allied lease and the Kahn-Central lease. Clause 7 of the Central-Allied lease gave Allied the right to assign the lease "for any ... lawful purpose [that] does not conflict with any exclusive privilege granted by Landlord in leases to other Tenants ... at the time of said assignment or subletting and exclusive privileges reserved by Landlord in paragraph EE of the Additional Rider attached hereto." Paragraph DD of the additional rider provided that during the term of the lease, Tenant (Allied), "shall not use the demised premises for any of the following principal uses: a hardware store, paint store, appliance store..." Paragraph EE of the rider does not reserve any exclusive privileges as to Central. The lease does not define "principal use."

Tipton concedes that it sells appliances such as refrigerators, ranges, washers, dryers and freezers. The evidence indicated that these so-called "white goods" accounted for roughly one-third of the value of Tipton's inventory. The remainder of Tipton's inventory consisted of two roughly equal categories: "brown goods," i.e., televisions, and audio equipment. The evidence also indicated that approximately half of Tipton's floor space was used for the sale of appliances. At trial and on appeal the parties have expended considerable effort in defining "principal use" and "appliance." The trial court did not expressly define either term, but it concluded that, "[t]he principal business of Tipton is the operation of a store offering appliances for sale contra to the provisions of paragraph DD ..." We believe this conclusion was erroneous.

In interpreting contracts we presume that words are intended to have their "natural and ordinary meaning." *J. E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo.banc 1973).

We also note that restrictive covenants are to be interpreted narrowly and in so doing we must be careful not to go beyond the express stipulations. *Dodier Realty & Investment Co. v. St. Louis National Baseball Club*, 361 Mo. 981, 238 S.W.2d 321, 323 (Mo.banc 1951); *Hall v. American Oil Co.*, 504 S.W.2d 313, 317 (Mo.App.1973). Paragraph DD does not totally prohibit the sale of appliances by Allied or its assignees. It merely prohibited the principal use of the premises as an appliance store. Based on our reading of the Central-Allied lease, using the "natural and ordinary meaning" of principal, we cannot, as a matter of law, classify Tipton as having had as its principal use an appliance store. "Principal" is defined in Webster's Third International Dictionary as "first; chief; most important; consequential or influential." Our court has held that "principally" was synonymous with "primarily," "chiefly," or "mainly." *Friedman Textile Co. v. Northland Shopping Center, Inc.*, 321 S.W.2d 9, 15–16 (Mo.App.1959). *See also, Carousel Snack Bars, Inc. v. Crown Construction Co.*, 439 F.2d 280, 283 (3d Cir. 1971). The fact that approximately half of Tipton's floor space was devoted to appliances is not dispositive. Major appliances such as refrigerators, ranges, washers and dryers take up more space than televisions and audio equipment. There was no evidence introduced that showed that appliances constituted the "chief" or "most important" part of Tipton's business. In fact, the evidence indicated that appliances were of secondary importance to Tipton's business, appliances constituting approximately one-third of the value of Tipton's inventory. Thus, St. Louis Union Trust did not meet its burden of proving that Tipton's principal use of the premises was as an appliance store.

We note that St. Louis Union Trust contends that for the purpose of determining Tipton's principal use, televisions should be categorized as appliances. We cannot accept this argument. The trial court did not make a finding of fact on this issue. Webster's Third International Dictionary defines "appliances" as, "something applied

to a purpose or use...; a tool, instrument, or device specially designed for a particular use...; a household or office utensil, apparatus, instrument, or machine that utilizes a power supply, esp. electric current (as a vacuum cleaner, a refrigerator, a toaster, an air conditioner)." We do not see how televisions and audio equipment could fall within the ambit of this definition. The Encyclopedia Britannica classifies "appliances" as "home equipment," and does not include televisions within this classification. Moreover, expert testimony elicited by Tipton indicated televisions and audio equipment are not considered to be appliances within the retail trade. We have been unable to discover any case-law in support of St. Louis Union Trust's proposition. *In Winter Park Appliance Center, Inc. v. Walling Crate Co.*, 196 So.2d 198 (Fla.App.1967), the court implicitly found radios, phonographs, stereos and televisions were not appliances. *Id.* at 199. Based on the foregoing, we conclude that St. Louis Union Trust's point is without merit.

■ The trial court also found that Tipton offered items for sale for which Central had been granted exclusive privileges. Our starting point is again Clause 7 of the Central-Allied lease which forbids the tenant from assigning the lease for a purpose which conflicts with any exclusive privilege granted by landlord to other tenants. The Kahn-Central lease granted Central an exclusive privilege. Clause 14 provided, in part:

"Tenant shall have the exclusive privilege of operating and shall operate a store in the portion of the Shopping Center owned by Landlord and it may offer for sale in said store all lines of merchandise now or hereafter sold in its stores located at Lindbergh Boulevard and Big Bend Road in Kirkwood and at Interstate 270 and Halls Ferry Road in Ferguson, Missouri and in addition thereto, it may offer for sale agricultural implements and supplies, boat and marine supplies, bait, soft goods and shoes provided that the merchandise it sells does not conflict with the exclusive privileges granted Al-

lied Supermarkets, Inc. in paragraph 10 of the lease between Central Hardware Company and Allied Supermarkets, Inc. dated May 24, 1968.

Landlord agrees that during the term of this lease he will not lease (except with Tenant's consent) any building in the portion of the Shopping Center owned by him for any of the following principal uses: a hardware store, paint store, appliance store, gardening store, sporting goods store, tool rental store, automotive supply store, boat and marine store, agricultural implement store or building material store and Landlord further agrees that so long as Central Hardware Company is a Tenant is [sic] said Shopping Center, Landlord will not permit other tenants in the portion of the Shopping Center owned by him to use any part of their premises for an outside selling area or to sell or display merchandise on the exterior of the premises they occupy...."

We are guided in our interpretation of this clause by well established law. Our Supreme Court has stated:

"The just interpretation of a contract arises on the whole subject-matter. It must be viewed from end to end and corner to corner, and all its terms pass in review; for one clause may modify, limit or illuminate the other. Taking its words in their ordinary and usual meaning, no substantive clause must be allowed to perish by construction, unless insurmountable obstacles stand in the way of any other course. Seeming contradictions must be harmonized away, if that course be reasonably possible."

*State Mutual Life Assurance Co. v. Dischinger*, 263 S.W.2d 394, 401 (Mo.1953). The first paragraph of Clause 14 states that "Tenant shall have the exclusive privilege of operating...a store." The rest of the first paragraph sets out the merchandise that Central *may* offer for sale. If the first paragraph of Clause 14 gives Central a broad exclusive privilege then no other tenant would be permitted to sell any item sold by Central. St. Louis Union Trust contends that this paragraph gives Central an exclusive right to sell any item sold in its Kirk-

wood or Ferguson stores. But the second paragraph expressly permits other tenants to sell many of the same items, such as hardware and appliances, so long as the offering for sale of these items do not constitute tenant's principal use. Applying St. Louis Union Trust's interpretation, the two paragraphs would be in conflict. For example, the first paragraph would prohibit other tenants from selling any appliances sold in the Kirkwood or Ferguson stores, but the second paragraph would permit other tenants to sell these same appliances, so long as the sale of these appliances did not constitute their principal use. We believe the correct interpretation is that advanced by Tipton. Under this approach Central has the exclusive right to operate a store on the leased premises. Central is permitted to offer for sale a large variety of goods. The second paragraph protects Central from having a store next to it with one of the enumerated principal uses. This construction is internally consistent. The trial court erred in concluding that Tipton violated the terms of the Central-Allied lease. Under the terms of the lease Central did not have the exclusive right to sell any particular products. Central's rights are explained by the lease's second paragraph.

Based on the foregoing discussion of the issues, we hold that the judgment of the trial court must be reversed. There was no substantial evidence to support the trial court's judgment. Because we reverse the trial court's judgment, we need not reach the issue of whether the award of attorney fees was justified.

DOWD, P. J., and GUNN, J., concur.