Jess BLEVINS and Nedra
Blevins, Respondents,

v.

BARRY–LAWRENCE COUNTY ASSO-
CIATION FOR RETARDED
CITIZENS, Appellant.

No. 67337.

Supreme Court of Missouri,
En Banc.

March 25, 1986.

David P. Vandagriff, Monett, for appellant.

James J. Randall, Monett, for respondents.

Thomas P. O'Donnell, Kansas City, for amicus curiae Mo. Developmental Disabilities Protection and Advocacy Services.

John Ashcroft, Atty. Gen., Joann Leykam, Asst. Atty. Gen., Jefferson City, for amicus curiae Mo. Dept. of Mental Health.

WELLIVER, Judge.

This is an appeal from a circuit court judgment enjoining appellant, Barry-Lawrence County Association for Retarded Citizens, from using its property as a group home for retarded individuals. Respondents, Jess and Nedra Blevins, brought this equitable action alleging that said use violates a restrictive covenant on the lot. We transferred the cause prior to opinion of the court of appeals. Rule 83.06. We reverse.

Appellant owns Lot 23 and the residence thereon in the Wildwood Estates Subdivision of Cassville, Missouri, and it plans on establishing a group home for eight unrelated mentally retarded persons. Respondents own Lot 24, which is across the street from appellant's property. The subdivision is protected by restrictive covenants, which provide in relevant part:

1. The aforesaid real property shall be used for residential purposes only. No buildings shall be erected, altered, placed or permitted to remain on said real property other than single or double family dwellings not to exceed two and one-half stories in height and private garages for not more than two cars. No detached structures shall be permitted.

Respondents argue that appellant's intended use of its property will contravene this covenant. Appellant responds by alleging (1) that its intended use does not violate the covenant; (2) that awarding an equitable injunction would violate public policy, as illustrated by the recently enacted § 89.-020, RSMo Supp. 1985 which forbids either zoning ordinances or restrictive covenants from excluding group homes for mentally retarded individuals; and (3) that § 89.020 must be given retroactive effect and, therefore, the provision of the restrictive covenant is void.

At the outset, this Court shares the observation of the trial court that the briefing and argument in this case were "excellent," and we greatly appreciate the thorough manner in which counsel have presented this Court with an exhaustive analysis of the case law in other jurisdictions.

■ It is a well-established rule that restrictive covenants are not favorites of the law, and when interpreting such covenants, courts should give effect to the intent of the parties as expressed in the plain language of the covenant; but, when there is any ambiguity or substantial doubt as to the meaning, restrictive covenants will be read narrowly in favor of the free use of property. *Shepherd v. State,* 427 S.W.2d 382, 386–87 (Mo.1968); *St. Louis Union Trust Co. v. Tipton Electric,* 636 S.W.2d 357, 359 (Mo.App.1982); *Udo Siebel-Spath v. Construction Enterprises,* 633 S.W.2d 86, 88 (Mo.App.1982). *See generally* 20 Am.Jur.2d Covenants § 185–187 (1965). It might be noted that respondent attempted to establish the intent of the parties to the covenant by offering the testimony of one of the original developers. Such evidence, however, is neither binding as a matter of law nor usually admissible. *See Shepherd v. State, supra,* at 386–87. *See also* 20 Am.Jur.2d Covenants § 322–24 (1965).

■ The initial question is whether the group home for eight unrelated persons and two house parents violates the restriction against any use other than for "residential purposes only." In *Shepherd v.*

*State,* 427 S.W.2d 382 (Mo.1968), this Court interpreted the phrase "residential purposes" in a restrictive covenant. This Court quoted with approval the following definition of "residential purposes":

Giving the words their plain and ordinary meaning, we would say that ... it is, one in which people reside or dwell, or which they make their homes, as distinguished from one which is used for commercial or business purposes.

*Shepherd v. State, supra,* at 388. *Cf. Cole v. Cunnings,* 691 S.W.2d 11, 14 (Tex.App. 1985). Apartment buildings, therefore, were permitted under the covenant.

It is beyond doubt that the operation of the group home in question has all the characteristics of a residential as opposed to a commercial use. The home is owned and run by a non-profit organization, and the underlying theory behind establishing such a home is that it serves as a surrogate family arrangement. There is no commercial enterprise, and the home is neither a boarding house nor an institutional facility. The trial court found the following facts relative to the operation of the home:

[Appellant] operates a number of "group homes" in which mentally retarded adults live in a residential setting with "house parents", often a husband and wife, who provide supervision and care for the retarded adults.

. . . .

The group home as contemplated to be operated by in Wildwood Estates by defendant is designed to allow the residents to develop their social, emotional and intellectual skills by living in a stable family-type environment. The house parents and residents function in an integrated family-style unit instead of as independent individuals who share only a place to sleep and eat. Residents are involved in performing simpl[e] household duties and participate in discussing, and if possible, resolving problems existing in the home and in making decisions as to the nature of group activities. Although ultimate decisions are left to house parents and/or the defendants board. The entire

group often attends church, goes shopping and travels about the community in a body.

... [F]ormal training for the retarded residents does not take place in the group home, but rather is conducted at an activity center or sheltered workshop during the workweek. Within the group home, the house parents encourage the development of social skills and simple homemaking skills by the individual living there. The primary purpose of a residential group home is to provide a living situation as normal as possible for developmentally disabled residents of the community and is ordinarily not a temporary living arrangement but, depending upon the individual, a resident may remain in the group home months, years or for their entire lifetime.

The trial court also found that prospective occupants of group homes are carefully screened and are admitted, at first, only on a trial basis. We believe that these findings of fact clearly indicate that appellant's intended use of Lot 23 as a group home is a residential purpose under the restrictive covenant.

Faced with a similar factual situation, a substantial number of courts have held that the operation of a group home is a residential purpose within the meaning of a covenant with such a restriction. *See e.g., Linn County v. City of Hiawatha,* 311 N.W.2d 95 (Iowa 1981); *Clark v. Manuel,* 463 So.2d 1276, 1279 (La.1985); *Concord Estates v. Special Children's Foundation, Inc.* 459 So.2d 1242, 1244 (La.App.1984); *Costley v. Caromin House, Inc.,* 313 N.W.2d 21 (Minn.1981); *Knudtson v. Trainor,* 216 Neb. 653, 345 N.W.2d 4, 6 (1984); *Berger v. State,* 71 N.J. 206, 364 A.2d 993 (1976); *J.T. Hobby & Son, Inc. v. Family Homes, Etc.,* 302 N.C. 64, 274 S.E.2d 174, 179 (1981); *Beres v. Hope Homes, Inc.,* 6 Ohio App.3d 71, 453 N.E.2d 1119 (1982); *Crowley v. Knapp,* 94 Wis.2d 421, 288 N.W.2d 815 (1980). *See generally* Annot., Restrictive Covenant Limiting Land Use to "Private Residence" or "Private Residential Purposes": Interpretations and Application, 43 A.L.R.4th 71 (1986); Annot.,

Use of Property for Multiple Dwellings as Violating Restrictive Covenant Permitting Property to be used for Residential Purposes Only, 99 A.L.R.3d 985 (1980). In *Jackson v. Williams,* 714 P.2d 1017 (Okla. 1985), for example, an injunction was sought against a non-profit organization attempting to establish a group home for five mentally handicapped women. The homeowners claimed that the group home violated a restrictive covenant, which provided in part:

> All lots in the tract shall be known and described as residential lots. * * * No structure shall be erected, altered, placed or permitted to remain on any building plot other than one detached single-family dwelling.

*Jackson v. Williams, supra,* at 1021. The court held that the covenant established both a use and structural restriction. "The first sentence ... requires the lots to be residential; the rest of the covenant requires that any structure be a single-family dwelling." *Id.* at 1021. Next, the court gave the following explanation for its holding that the group home is a residential use:

> It is the purpose and method of operation which serves to distinguish the proposed residential use of the home from that normally incident to a purely commercial operation. Financial gain is clearly not the motivation of the Association in the operation of the home.
>
> The five women are to function as a single housekeeping unit by sharing in the preparation of meals, performing housekeeping duties and planning recreational activities. Most of the women have outside employment. The housekeeper will provide supervision and guidance similar to that of the head of any household. The day-to-day activities occurring at the home, as viewed from the outside, will not make it appear unlike the rest of the neighborhood. The essential purpose of the group home is to create a normal family atmosphere dissimilar from that found in traditional institutional care for the mentally handi-

capped. The operation of a group home is thus distinguisable from a use that is commercial—i.e., a boarding house that provides food and lodging only—or is institutional in character. Furthermore, no educational training would be provided at the home nor would there be medical or nursing care administered to the residents. In virtually all respects, save for the mental capacity of those who would live in the home, the on-the-premises operations would be much like a typical suburban household.

*Jackson v. Williams, supra,* at 1022.

■ The remaining question is whether appellant's intended use of the property violates the second sentence of the restrictive covenant, which prohibits erecting, altering, placing or permitting any *building* "other than single or double family dwellings not to exceed two and one-half stories in height and private garages for not more than two cars." Respondents argue that this restriction is a restriction on the use of the property; and, if a restriction on use, appellant's group home is neither a single nor a double family dwelling.[1]

By its plain terms, however, this restriction applies only to structures and not to the use of the property. The language, therefore, is substantially different than the covenant being construed in *London v. Handicapped Facilities Board of St. Charles County,* 637 S.W.2d 212, 214 (Mo. App.1982), where the court enjoined a

group home under a restriction prohibiting "[n]o more than one family shall live in any residence ..." The restriction more closely resembles the covenant in *Jackson v. Williams,* where the court held that the group home did not violate the second sentence of the restriction which permitted only single-family dwellings:

> The term "family" was, in fact, used without a definition and hence did not necessarily exclude from its meaning a group of unrelated persons living together in a home. This phrase was intended to describe the character of the structure rather than limit the use of the property to single-family residence. When, as here, the restrictive covenant under consideration prohibits occupancy of more than one family unit but does not address itself to the composition of the family, a court is loathe to restrict a family unit to that composed of persons who are related, one to another, by consanguinity or affinity.

*Jackson v. Williams, supra,* at 1023. Similarly, in *J.T. Hobby & Son, Inc. v. Family Homes, etc.,* 302 N.C. 64, 274 S.E.2d 174, 181 (1981), the court held that a "provision in a restrictive covenant as to the character of the structure which may be located upon a lot does not by itself constitute a restriction of the premises to a particular use." A number of other jurisdictions have reached a similar conclusion.[2] *See e.g.,*

---

1. The trial court order enjoined appellant from "causing or allowing in excess of two individuals not related by blood, marriage or adoption" to use the residence. This would seem inconsistent with respondents' argument that this second clause in the covenant is a *use* restriction because double family dwellings are permitted.

2. We need not reach the issue of whether the group home would satisfy a single or double family use restriction. However, it might be noted that a number of jurisdictions, whether interpreting a restrictive covenant or a zoning ordinance, hold that certain group homes may be a "family" unless an explicit definition contained in the covenant or ordinance dictates otherwise. *See e.g., City of Santa Barbara v. Adamson,* 27 Cal.3d 123, 164 Cal.Rptr. 539, 610 P.2d 436 (1980) (a restrictive definition would violate state constitution); *Oliver v. Zoning Comm'n of Town of Chester,* 31 Conn.Sup. 197,

326 A.2d 841, 845 (1974); *Douglas County Resources, Inc. v. Daniel,* 247 Ga. 785, 280 S.E.2d 734 (1981) (broad definition in ordinance); *Linn County v. City of Hiawatha,* 311 N.W.2d 95 (Iowa 1981); *Malcolm v. Shamie,* 95 Mich.App. 132, 290 N.W.2d 101 (1980); *Costley v. Caromin House, Inc.,* 313 N.W.2d 21, 25–26 (Minn.1981); *State ex rel. Region II Child & Family Services, Inc. v. District Court,* 187 Mont. 126, 609 P.2d 245 (1980); *Knudtson v. Trainor,* 216 Neb. 653, 345 N.W.2d 4 (1984) (adopting trial court opinion which quoted with approval a broad definition of "family"); *State v. Baker,* 81 N.J. 99, 405 A.2d 368 (1974) (restrictive definition would violate state constitution); *Saunders v. Clark County Zoning Dept.* 66 Ohio St.2d 259, 421 N.E.2d 152, 155 (1981); *Gregory v. State, Dept. of Mental Health,* 495 A.2d 997 (R.I.1985); *Mongony v. Bevilacqua,* 432 A.2d 661 (R.I.1981); *Collins v. City of El Campo,* 684 S.W.2d 756, 760 (Tex.App. 1984); *Crowley v. Knapp,* 94 Wis.2d 421, 288

*Clark v. Manuel,* 463 So.2d 1276, 1279 (La.1985); *Leland Acres Home Owner Ass'n v. R.T. Partnership,* 308 N.W.2d 648 (1981); *Costley v. Caromin House, Inc.* 313 N.W.2d 21, 26 (Minn.1981); *Knudtson v. Trainor,* 216 Neb. 653, 345 N.W.2d 4 (1984); *Collins v. City of El Campo,* 684 S.W.2d 756, 761 (Tex.App.1984). *Cf. Sissel v. Smith,* 242 Ga. 595, 250 S.E.2d 463, 464 (1978).

The record indicates that appellant does not intend to alter the structure of the residence on its lot. We hold, therefore, that appellant's intended use of its property does not violate the terms of the restrictive covenant. The trial court judgment granting the injunction is reversed.

HIGGINS, C.J., and BILLINGS, BLACKMAR, DONNELLY and ROBERTSON, JJ., concur.

RENDLEN, J., concurs in result.

N.W.2d 815 (1980). *See also Craig v. Bossenbery,* 134 Mich.App. 543, 351 N.W.2d 596 (1984) (covenant not enforceable as a matter of public policy); *Crane Neck Ass'n v. New York City/Long Island County Services Group,* 61 N.Y.2d 154, 472 N.Y.S.2d 901, 460 N.E.2d 1336 (1984) (covenant not enforceable as a matter of public policy). *But cf. Macon Ass'n for Retarded Citizens v. Macon-Bibb County Planning and Zoning Comm'n,* 252 Ga. 484, 314 S.E.2d 218 (1984) (explicit definition of "family" controlling); *Omega Corp. of Chesterfield v. Malloy,* 228 Va. 12, 319 S.E.2d 728 (1984) (court held that home was not a family because of the type of supervision by counselors who were government employees). *See generally* Brussach, Group Homes, Families, and Meaning in the Law of Subdivision Covenants, 16 Ga.L.Rev. 33 (1981); Guernsey, The Mentally Retarded & Private Restrictive Covenants, 25 William & Mary L.Rev. 421 (1984); Scott, A. Psycho-social Analysis of the Concept of Family as Used in Zoning Laws, 88 Dick.L.Rev. 368 (1983); N. Williams, American Land Planning Law ch. 52, at Supp. 85 (1974 and Cum. Supp. 1985) (collecting cases); Annot., Community Residence For Mentally Disabled Persons as Violation of Restrictive Covenants, 41 A.L.R.4th 1276 (1985); Annot., What Constitutes a "Family" Within Meaning of Zoning Regulation or Restrictive Covenant, 71 A.L.R.3d 693 (1976). Recently, the United States Supreme Court held that the application of a particular ordinance to prohibit a group home for mentally disabled persons was unconstitutional. *City of Cleburne, Tex. v. Cleburne Living Center,* —— U.S. ——, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). *See generally* Connor, Zoning Discrimination Affecting Retarded Persons, 29 Wash.U.J.Urb. & Contemp.Law 67 (1985).