[No. 33339.   Department One.   September 8, 1955.]

THE STATE OF WASHINGTON, *on the Relation of Don Eastvold, as Attorney General, Plaintiff,* v. THE SUPERIOR COURT FOR COWLITZ COUNTY, *J. E. Stone, Judge, Respondent.*[1]

[1]Reported in 287 P. (2d) 494.

The Attorney General, Newell Smith and Paul Sinnitt, Assistants, for relator.

Lester Huntington, Jerome Walstead, Ronald Moore, and Willard Walker, for respondents.

SCHWELLENBACH, J.—This proceeding is by way of a writ of certiorari to review the action of the superior court for Cowlitz county in an eminent domain proceeding.

The state petitioned to have all rights of ingress and egress to certain property in Cowlitz county declared necessary for public use and that an order be entered accordingly,

"EXCEPT that the right of reasonable access shall be granted to an OFF and ON APPROACH 20 feet in width, on the easterly side, north bound only, at Highway Engineer's Station 810 20, as shown on sheet 7 of 11 sheets, plans of said highway as approved March 31, 1953. Access over said approach to and from said Primary State Highway No. 1 shall be limited to such travel as would be necessary to the above property as presently used, which is a one-family residence."

The landowners filed a protest, contending that the petitioner sought not only to limit the means of ingress and egress, but also sought to control the use to which the remaining land might thereafter be put. They also challenged the jurisdiction of the court to proceed with the condemnation, claiming that it was unauthorized by any statute of the state.

Upon a hearing, the trial court sustained the objections of the landowners and dismissed the action. This proceeding follows.

Highway engineers testified that limited access is necessary in order to control traffic that enters and leaves the

main highway. They pointed to one section of the state highway system where access is unlimited, which has an average accident rate three times greater than that of the entire state system. They testified that they had devised different kinds of approaches, one of which (the one in question) was designated the type "A" approach; that an "A" approach is an approach limited to the use of one family; that it limits the number of vehicles entering and leaving the highway; and that in order to preserve the funds allocated for highway purposes and also as a safety feature for vehicles traveling on the main artery, it is necessary that the access rights be taken and limited.

The trial court was of the opinion that it had no power under the statute to limit the use of lands back of the access, and that it was a burden which would be thrown on adjacent property.

In *State ex rel. Veys v. Superior Court,* 33 Wn. (2d) 638, 206 P. (2d) 1028, and *State ex rel. Troy v. Superior Court,* 37 Wn. (2d) 660, 225 P. (2d) 890, we discussed other phases of the limited access law.

The legislature, in RCW 47.52.001, as to limited access facilities, made its "Declaration of Policy."

"Unrestricted access to and from public highways has resulted in congestion and peril for the traveler. It has caused undue slowing of all traffic in many areas. The investment of the public in highway facilities has been impaired and highway facilities costing vast sums of money will have to be relocated and reconstructed. It is the declared policy of this state to limit access to the highway facilities of this state in the interest of highway safety and for the preservation of the investment of the public in such facilities."

RCW 47.52.010 provides:

"For the purposes of this chapter a 'limited access facility' is defined as a highway or street especially designed or designated for through traffic, and over, from, or to which owners or occupants of abutting land, or other persons, have no right or easement, or only a limited right or easement of access, light, air, or view by reason of the fact that their property abuts upon such limited access facility, or for any other reason to accomplish the purpose of a limited access facility. Such highways or streets may be parkways, from

which trucks, buses, and other commercial vehicles shall be excluded; or they may be freeways open to use by all customary forms of street and highway traffic."

RCW 47.52.040 provides in part:

"The highway authorities of the state, counties, and incorporated cities and towns may so design any limited access facility and so regulate, restrict, or prohibit access as to best serve the traffic for which such facility is intended; and the determination of design by such authority shall be conclusive and final. . . . No person shall have any right of ingress or egress to, from, or across limited access facilities to or from abutting lands, except at designated points at which access may be permitted by the highway authorities upon such terms and conditions as may be specified from time to time."

RCW 47.52.050 provides:

"For the purpose of this chapter the highway authorities of the state, counties, and incorporated cities and towns, respectively, or in cooperation one with the other, may acquire private or public property and property rights for limited access facilities and service roads, including rights of access, air, view, and light, by gift, devise, purchase, or condemnation, in the same manner as such authorities are now or hereafter may be authorized by law to acquire property or property rights in connection with highways and streets within their respective jurisdictions. All property rights acquired under the provisions hereof shall be in fee simple. In the acquisition of property or property rights for any limited access facility or portion thereof, or for any service road in connection therewith, the state, county, incorporated city and town authority may, in its discretion, acquire an entire lot, block, or tract of land, if by so doing the interest of the public will be best served, even though said entire lot, block, or tract is not immediately needed for the limited access facility."

■ It will thus be seen that the state has been granted rather sweeping powers in the acquisition of limited access facilities for the purpose of regulating traffic on its main highways. We agree with the landowners that the state has conceived an ingenious device (one purpose of which the state freely admits is to decrease the amount of damages) of limiting access to such travel as would be used by a one-

family residence. Under the law, the state had the right to take all of the property involved, which consists of approximately four and one-half acres. It also had the right to take only that portion thereof which it considered necessary to carry out its purpose. It concluded that the type "A" approach, limiting the number of vehicles that may enter and leave the highway, would better protect vehicles traveling thereon.

Complaint is made that the plan is not definite; that it is not known how many people may be in one family, or how many cars one family may own, or whether or not the family could entertain guests who would bring their own cars. "Such travel as would be necessary for a one-family residence" is definite and understandable. If necessary, administrative details can be worked out in the future.

The trial court was of the opinion that such a plan would limit the use of lands back of the access, thus casting a burden on adjacent property. The only issue before the trial court was whether or not the property could be taken for a public use. As we have seen, the state has the right to limit access to and from public highways. The question of whether or not, because of this particular method, a portion, or all, of the property involved is, in effect, being taken or damaged, is a matter to be decided by a jury in a subsequent step of the eminent domain proceedings.

The order of dismissal is reversed, and the cause is remanded with direction to enter an order of public use as prayed for.

HAMLEY, C. J., DONWORTH, FINLEY, and OTT, JJ., concur.