Edna D. SHEPHERD, Plaintiff-Respondent,

v.

STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Defendant-Appellant.

Edna D. SHEPHERD, Plaintiff, Appellant
and Cross-Respondent,

v.

STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri, Defend-
ant, Respondent and Cross-Appellant.

No. 53261.

Supreme Court of Missouri,
Division No. 1.

May 13, 1968.

Arthur R. Kincaid, William B. Waters, Liberty, for respondent Shepherd; Hale, Coleberd, Kincaid & Waters, Liberty, of counsel.

Robert L. Hyder, Jefferson City, Earl H. Schrader, Jr., John E. Casey, Kansas City, for defendant, respondent and cross appellant.

FRANK W. HAYES, Special Judge.

Since both plaintiff and defendant have appealed from the judgment of the trial

court herein, the parties will be referred to as plaintiff and defendant.

In 1953 and prior thereto, plaintiff Edna D. Shepherd and her husband, Ernest Shepherd (now deceased) owned in Clay County, Missouri, some real estate abutting Route U.S. 69 on the east. On February 20, 1953, plaintiff and her husband duly executed and delivered, for a consideration of four thousand eight hundred and thirty dollars, their deed to a strip of land lying along and adjoining Highway 69 on the east and located in SE ¼ of SW ¼ of Section 14, Township 51N and Range 32 West in Clay County, Missouri. The deed was duly recorded.

The deed contained the following reservation and restriction:

"Grantors, for themselves, their heirs, successors, assigns, and invitees, reserve the usual right of direct access between their property, east of present highway in Sections 11 and 14, T51N, R32W, in Clay County, Missouri (outside the right-of-way line), and the adjacent outer roadway shown from Stations 50/65 to 52/15 on the road plans for State Highway now designated Route US 69, and also any adjacent outer roadway which may be maintained by a governmental agency on said highway, and along such outer roadway to the thruway; and during (and only during) such time as no other adjacent outer roadway exists, the right of direct access for ordinary farm or residential purposes is reserved to and from such thruway at two places as indicated on the east side of the road plans as 'F.E.', over which owners may construct entrances 20 feet wide with 14 foot travel width, and centered at the right-of-way, one opposite Station 82/89 and one opposite Station 112/75; and also the present entrance will be maintained south of Station 68/46; but convey and relinquish all other abutter's rights of direct access between said abutting property and highway (including its right-of-way); and ownership of said abutting property shall not give any other right of access

greater than, or different from, those belonging to the general traveling public."

Up to date there has been no outer roadway constructed adjacent to Route U.S. 69 in this area and defendant has not indicated if and when such road will be built.

As stipulated in the trial court, the plaintiff now proposes to build on the land adjacent to the highway, a number of commercial buildings and either multi-family residences or apartment buildings and must use the access points in question in order that the development be profitable. It was stipulated that defendant had informed plaintiff that the use of the access points for such planned development was in violation of the terms of the restrictive covenants in the deed.

To determine the issues between the parties and to have construed the rights and liabilities of the parties under the aforesaid deed, the plaintiff brought her action for a Declaratory Judgment.

It is the contention of the plaintiff that defendant did not and does not have either statutory or constitutional power to limit, by contract or otherwise, the use of access points between the right of way of defendant and plaintiff's adjacent private property and if so, the phrase "the right of direct access for ordinary farm or residential purposes" in the deed does not prohibit her use of the access entrances for commercial purposes and permits use of such access points in connection with apartment buildings, duplexes, multi-family residences and single-family residences.

The defendant contended that the phrase "for ordinary farm or residential purpose" restricted the use of the two access points as to such use as would ordinarily result from ordinary farming operations and in its use as a residence for the persons living on the farm.

The trial court held (1) that the defendant had the constitutional authority to restrict access use by the deed of conveyance involved herein and (2) that the phrase

"for ordinary farm or residential purposes" in the deed restricted the commercial use of the entrance other than for ordinary farm purposes or necessary commercial uses incident to maintaining residential use and that the words "residential purposes" would include the use of the land for apartment building, duplexes, multi-family residences and single-family residences. Each party has appealed from the ruling adverse to them. The court will consider each point in the above order.

Section 29 of Article IV of the Constitution of Missouri, V.A.M.S. among other things provides as follows:

"It (referring to the Commission) shall have authority over and power to locate, relocate, design and maintain all state highways; and authority to construct and reconstruct state highways, subject to limitations and conditions imposed by law as to the manner and means of exercising such authority; and authority to limit access to, from and across state highways where the public interest and safety may require, subject to such limitations and conditions as may be imposed by law."

Section 227.120, V.A.M.S., among other things provides:

"The State Highway Commission shall have power to purchase, lease, or condemn, lands in the name of the state of Missouri for the following purposes when necessary for the proper and economical construction and maintenance of state highways."

"(13) Acquiring lands for any other purpose necessary for the proper and economical construction of the state highway system for which the commission may have authority granted by law."

In the case of State ex rel. State Highway Commission v. James, 356 Mo. 1161, 205 S.W.2d 534 (Supreme Court of Missouri, en Banc), the petition for mandamus filed by relator in the circuit court was in furtherance of a plan duly adopted by the Commission to improve Highway 40 by construction of a new road with access limited to certain designated points. The trial court held that the Commission had no power to condemn or extinguish the easement or right of abutting owners of access to the highway. In the Supreme Court, the respondent contended "that the power to condemn the right of access has not been granted to the Commission either by constitution or statute." In the case at bar, plaintiff contends that *power to limit access by contract* has not been granted Commission by constitution or statute. It is evident that if such right exists by right of condemnation it would certainly exist under voluntary contract entered into by the parties.

The Supreme Court held the constitution gave the Commission the right to limit access and to condemn it, saying l.c. 536:

"* * * Access to highways, even by abutting owners, is often limited by the necessary construction of cuts, fills, viaducts, etc., but Section 29 goes farther than that. It vests the Commission with authority, when it deems the public interest and safety to require, to limit access at points not made inaccessible by the nature of the road's construction."

In further discussing the Commission's power to limit access, it says, l.c. 537:

"Section 29 of Article IV of the Constitution grants the Commission authority to limit the easement of access. How is it to be limited? Lacking consent of the owner there is only one way to limit or extinguish this interest in land and that is by the exercise of the power of eminent domain. Section 8759 of the statutes grants the power of eminent domain to the Commission not only to procure 'right of way' but for any other purpose necessary for the *proper* and economical construction of the state highway system. Section 29 of Article IV provides that limitation of access is a proper consideration in the construction of state highways where the public interest and safety may require and, therefore, announces a purpose for which

condemnation may be had under the statute. The power to limit access is 'subject to [such] limitations and conditions [as may be] imposed by law.' Existing law, both statutory and constitutional, already limit and condition the taking of any interest in land by providing that just compensation must be ascertained and paid in the manner provided by statute. The general assembly is authorized to impose additional limitations and conditions."

Also the court says at page 537:

"The foregoing shows that this court and courts of other states have held that the statutory power to condemn 'land' includes the power to condemn appurtenant easements in the land."

In Handlan-Buck Company, a Corporation v. State Highway Commission of Missouri, Mo., 315 S.W.2d 219, this court, in approving the James case, ruled as follows:

"[6] The authority of the State Highway Commission to construct limited access highways is derived from the 1945 Constitution, Article IV, Secs. 29, 30; State ex rel. State Highway Commission v. James, 356 Mo. 1161, 205 S.W.2d 534, loc. cit. 536–538(6) (7, 8). The Constitution, Article IV, Sec. 29, provides that the Commission shall have 'authority to limit access to, from and across state highways where the public interest and safety may require, subject to such limitations and conditions as may be imposed by law.'

"In the case of State ex rel. State Highway Commission v. James, supra, cited by plaintiffs, this court en banc held that the defendant Commission had the authority to condemn or extinguish the right of an abutting owner to access to a state highway. If condemnation proceedings were necessary in the case before us for the defendant to close Poplar Street at Third Street, plaintiffs would not be necessary parties. Their property does not abut on any portion of the streets at the points affected by the closing." Again in State of Missouri ex rel. State Highway Commission of Missouri

v. Hammel, et al., Mo., 372 S.W.2d 852, this court says, l.c. 854: " * * * As noted, however, the commission may limit or extinguish the easement of access through the exercise of the power of eminent domain where the public interest or safety so require (citing James case)."

And also at page 856:

"[6] Appellant's final point in his brief appears to be that to wholly deprive a landowner of his rights of access to his remaining land by reason of the construction of a limited access highway when such access could be provided by 'service streets,' constitutes a taking of the remaining land 'not for a public use.' We have heretofore noted that the commission, through proceedings in eminent domain, may, in the proper exercise of the police power vested in it, limit and extinguish access between a highway and abutting property. State ex rel. State Highway Commission v. James, supra. Appellant is entitled to just compensation for the damages he has lawfully sustained as a result of the construction of the highway in question; but such matters are not before us on this appeal."

The defendant cites the case of State of Washington on the Relation of Don Eastvold as Attorney General, Petitioner and Relator v. Superior Court, etc., 47 Wash. 2d 335, 287 P.2d 494, in support of its contention. There the state sought to limit by eminent domain the access to "such travel as would be necessary to the above property as presently used, which is a one-family residence." The trial court sustained defendant's protest and dismissed the action on the ground that the action was unauthorized by any statute in the state.

The Supreme Court of Washington held that the legislature, by statute as to limited access facilities, had made its "Declarations of Policy." The Court held that access to and from the highway limited to "such travel as would be necessary for a one-family residence" was definite and understandable and was permitted by limited

access highway law. The court said, l.c. 496:

"[1] It will thus be seen that the state has been granted rather sweeping powers in the acquisition of limited access facilities for the purpose of regulating traffic on its main highways. We agree with the landowners that the state has conceived an ingenious device (one purpose of which the state freely admits is to decrease the amount of damages) of limiting access to such travel as would be used by a one-family residence. Under the law the state had the right to take all the property involved, which consists of approximately four and one-half acres. It also had the right to take only that portion thereof which it considered necessary to carry out its purpose. It concluded that the Type 'A' approach, limiting the number of vehicles that may enter and leave the highway, would better protect vehicles traveling thereon."

■ The case was reversed and cause was remanded with direction to enter an order of public use as prayed for. This case is in point and supports the defendant's position. Our constitution and statutes authorizes the Commission to extinguish or limit access as did the statutes in the above case. The right to extinguish would include the right to limit. The acceptance of the deed in question could not be ultra vires on part of defendant. If the Commission, by exercising the right of eminent domain, has the *power to extinguish or limit the access of the abutting owner,* against his will, under the constitution and above cases, then certainly the Commission has the power, *with the consent of the abutting owner,* to agree upon such limitations and restrictions of access as they desire.

Plaintiff contends that to limit the access herein is a zoning of the adjacent private property. There is nothing in the conveyance from plaintiff to defendant that mentions what use may or may not be made of any real estate of plaintiff's except the access. The plaintiff may use her real estate for any lawful purpose. There are no restrictions in the deed. The only restriction is on the use of the access.

■ If plaintiff has outlet to other highways or can provide other outlets, she may build any type of building thereon and use these buildings for any lawful purpose, commercial or otherwise. The only restriction is that people driving to and from such buildings may not use the restricted accesses. The court holds that the restricting of the access is not a zoning of the real estate adjacent to the highway.

In view of our constitutional and statutory provisions and the above decisions, we do not believe that the authorities cited by plaintiff are controlling and we will not analyze them. In our opinion, the parties had a right to limit and restrict the access as they did in conveyance made by plaintiff to defendants. This point is decided against the plaintiff.

Having determined that the parties may limit and restrict the use of the accesses by deed, the next question is what does the restriction "ordinary farm or residential purposes" mean? Does it limit the use of the entrances to such uses as would ordinarily result from ordinary farming operations and its ordinary use as a residence for the person operating or living on the farm as contended by defendant or does it permit the use of the access points for any residential purpose, including apartment buildings, duplexes, multi-family residences and single-family residences as contended by plaintiff and so decided by the trial court?

We have not been cited nor have we found any Missouri cases exactly in point. Our courts, however, do lay down some general rules as to construing restrictive covenants. As in Jones v. Haines, Hodges & Jones Building & Development Company, Mo.App., 371 S.W.2d 342, where it is said, l. c. 343:

"[1] The fundamental rule in construing restrictive covenants is that the intention of the restrictor as shown by the writ-

ten instrument governs. An aiding principle is that, subject to the fundamental rule, restrictive covenants are strictly construed in favor of free use of property. Wilson v. Owen, Mo.Sup., 261 S.W.2d 19.

"[2, 3] The principle that restrictions as to the use of real estate should be strictly construed and doubts resolved in favor of the free use of property should never be applied in such a way as to defeat the plain and obvious purpose of the restriction. Absurd interpretations are always to be avoided."

Also in Barnes v. Anchor Temple Association, Mo.App., 369 S.W.2d 893, the court says, l. c. 898:

"[1, 2] Many cases in Missouri, and those cited by defendant, set forth the general principle of law that, ' * * * Restrictive covenants will not be extended by implication to include anything not clearly expressed in them, and if there is substantial doubt of their meaning, such doubt should be resolved in favor of the free use of the property. * * * ' Chiles v. Fuchs, 363 Mo. 114, 249 S.W.2d 454, 456(4–5); Mathews Real Estate Co. v. National Printing & Engraving Co., 330 Mo. 190, 48 S.W.2d 911, 913(2–4), 81 A.L.R. 1039; Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40 S.W.2d 545, 555(21, 22); Marks v. Bettendorf's, Inc., Mo.App., 337 S.W.2d 585, 590(6–8)."

In Jernigan v. Capps, et al., 187 Va. 73, 45 S.E.2d 886 the complainants filed their bill in equity to restrain defendants from erecting a one-story four-family apartment building on a lot which carried a restriction that "only one residential building * * * shall be erected on any lot" in the subdivision and that "the use of the land shall be restricted to residential purposes * * *." The trial court enjoined defendant from "erecting or building the proposed four-family apartment or multiple family residence or any other structure than a one-family residence" upon the lot. The Supreme Court of Virginia reversed the trial

court, dissolved the injunction and dismissed the complaint.

The court, at page 888, said:

"The precise question presented to us is whether the erection of this building, designed to house four families, violates the covenants or restrictions that 'only one residential building * * * shall be erected on any lot,' or that 'the use of the land shall be restricted to residential purposes.'

"The appellees (the complainants below) argue, and the trial court seems to have held, that when the particular words are read in their setting, along with the other restrictions, they show a purpose of the draftsman to establish and maintain in the area a high-class residential district, limited to the erection of buildings each designed for the accommodation of a single family, and for the exclusion of apartment houses and multiple residence buildings.

"On the other hand, the appellant (Jernigan) argues that restrictions of this character should be strictly construed and not extended by implication; that neither apartment houses nor multiple family residences are excluded by express language; that the purpose of the particular language used, restricting the erection of 'only one residential building' to a single lot, was to confine the use of the land and buildings thereon to residential purposes, as distinguished from commercial or business purposes; and that it was not intended thereby to exclude the proposed building, which, he says, is 'a residential building,' and is to be used for 'residential purposes.' "

At page 889, the court said:

"[5] It is an elementary rule of construction that the purpose or intent of a written instrument must be determined from the language used in the light of the circumstances under which it was written. In the case now before us the restrictions do not in express terms forbid the erection of 'an apartment house' or 'a multiple family residence.' Nor do they limit the type of a permitted building to 'a single

family dwelling,' 'a single family residence,' 'a single family house,' 'a single detached dwelling.' None of these or other expressions of like clear import are used.

"These restrictions, the record shows became applicable to the lots in this subdivision in 1929, when apartment houses and multiple family residences were in common use in the City of Norfolk and elsewhere. In subdivisions designed by promoters as highly restricted residential districts, apartment houses are excluded in clear and express terms by restrictive covenants in deeds in the chain of title. For instance, in Elterich v. Leicht Real Estate Co., 130 Va. 224, 227, 107 S.E. 735, 736, 18 A.L.R. 441, decided January, 1921, the restriction in a subdivision, likewise located in the City of Norfolk, was that 'no flat roofed or double house, * * * or *apartment house* shall be erected or placed upon the property hereby conveyed.' (Italics supplied.)

"By like clear language apartment houses were excluded from certain areas by zoning laws. Thus the Norfolk city zoning ordinance, adopted August 19, 1924, uses the phrase 'a single detached dwelling' in defining the permitted uses applicable to highly restricted residential districts.

"Neither do we think that the language in the restrictions before us that 'only one residential building * * * shall be erected on any lot' in the subdivision, prohibits by necessary implication the erection of the proposed building.

"The restriction has a two-fold purpose: (1) To inhibit the erection of more than a single building on a single lot; and (2) to confine the type of the structure and its use to that of 'a residential building.'

"Plainly, the proposed structure conforms to the first-stated purpose, for a single building is to be erected on a single lot. The only question to be determined, then, is whether the proposed structure is 'a residential building.'"

And again at page 889:

"[6] It is not necessary that we go to a dictionary or a law book to ascertain the meaning of 'a residential building.' Giving the words their plain and ordinary meaning, we would say that such a building is one which is used for residential purposes— that is, one in which people reside or dwell, or in which they make their homes, as distinguished from one which is used for commercial or business purposes.

\* \* \* \* \* \*

"An 'apartment house' is defined by the same dictionary as: 'A building containing a number of separate residential suites, but usually having conveniences, such as heat, elevator service, etc., furnished in common.'"

And at page 891, the court says:

"It follows from what has been said that the additional restriction to which the lot is subject, that 'the use of the land shall be restricted to residential purposes,' does not prohibit the erection on the lot of the proposed one-story four-family building. See Schwarzschild v. Welborne, [186 Va. 1052, 45 S.E.2d 152] supra. See also, note 3, supra."

In McMurtry v. Phillips Investment Company, 103 Ky. 308, 45 S.W. 96, an action was brought to restrain the erection of what is known as an "apartment house." The judgment in trial court was for defendant. Upon appeal, the court of appeals of Kentucky affirmed the case and held that a condition in a deed providing that the property conveyed "shall be used for residence purpose only" does not forbid the erection of an apartment building to contain flats, each complete for housekeeping but to be provided with a large dining room for use of occupants.

In Sporn et al. v. Overholt et al., 175 Kan. 197, 262 P.2d 828, cited by plaintiff, there was an action to construe a restrictive covenant which is as follows:

"(1) That the above described lots are hereby designated as *residence* lots and that no *dwelling* shall be erected thereon which

shall cost less than Three Thousand Dollars; said *dwelling* to consist of four or more rooms \* \* \*. (Italics supplied.)" Plaintiffs commenced construction of a duplex residence on one lot and brought this action to construe the restrictive covenant. The trial court held that the restriction prohibited the construction of an apartment duplex. Upon appeal, the Supreme Court of Kansas reversed the case, saying, l. c. page 831:

"[9, 10] It appears to be the general rule that any kind of a building devoted exclusively to residence purposes, whether a duplex or an apartment house, may be erected under a covenant limiting the use of the property to residence purposes. 14 Am.Jur., Covenants, Conditions and Restrictions, 631 § 245; 26 C.J.S. Deeds § 164(c) (2), p. 530. Generally, the restrictions using the unqualified terms 'residence' or 'dwelling' have been held merely to limit the type of use to be made of the property and not to forbid the erection of a residence for occupancy by several families such as a duplex or double house which, under the weight of authority, has been held permissible, as the terms 'residence' and 'dwelling' have the effect merely to limit the property to living quarters, as distinguished from business or commercial uses. 26 C.J.S., Deeds, § 164(c) (2), p. 532; Bennett v. Petrino, 235 N.Y. 474, 139 N.E. 578; Bear v. Bernstein, [251 Ala. 230, 36 So.2d 483] supra; see, also, annotation in 14 A.L.R.2d 1376 to 1436; Reformed Protestant Dutch Church v. Madison Avenue Bldg. Co., 214 N.Y. 268, 108 N.E. 444, L.R.A.1915F, 651."

In Charlotte Console Construction Company v. Cobb, 195 N.C. 690, 143 S.E. 522, 523, it was held that a restriction that a lot of land "shall be used for residential purposes only \* \* \* and there shall not at any time be more than one resident or dwelling house on said lot," was not violated by the erection of a four-family apartment house. The court saying at page 524, "A building occupied by four families is no

less a dwelling house than one occupied by a single family."

In Tillotson et al. v. Gregory, 151 Mich. 128, 114 N.W. 1025, the court held that a restriction in a deed that the lot was to be used for residence purposes only does not limit the use of the lot to the construction of a residence designed for one family only, but a four-family flat building may be constructed.

In Baker et ux. v. Smith et al., 242 Iowa 606, 47 N.W.2d 810, the court in holding that the use of lots "for residence purposes" did not prohibit the erection of an apartment house, saying, l. c. page 812:

"[3] III. The trial court construed the restriction in the deeds 'for residence purposes exclusively', to mean, 'for single family residence purposes exclusively.' This construction was based in part upon the express terms and provisions of the restrictions in the deeds. We hold the language of the restrictions does not warrant this construction. Although this court has not determined the question it is the weight of authority that restrictions built around the terms 'residence' or 'residential purposes,' without more, merely limit the use of the property to living purposes as distinguished from business or commercial purposes and do not exclude apartment houses. Jernigan v. Capps, 187 Va. 73, 45 S.E.2d 886, 175 A.L.R. 1182; Virgin v. Garrett, 233 Ala. 34, 169 So. 711; Yorkway Apartments v. Dundalk Co., 180 Md. 647, 26 A.2d 398; Hamm v. Wilson, 169 Ga. 570, 151 S.E. 11, 12."

The rule that apartment houses are permissible on property restricted to use for "residential purposes" is recognized in Weber v. Graner, 137 Cal.App.2d 771, 291 P.2d 173; McMahan v. Hunsinger, Ky., 375 S.W.2d 820; Bassett Bldg. Co. v. Jehovah Evangelical Lutheran Church, 371 Mich. 459, 124 N.W.2d 236; Muilenburg v. Blevins, 242 N.C. 271, 87 S.E.2d 493; Gagliardi v. Shender, 28 Pa.Dist. & Co.R.2d 164.

The restriction in the conveyance here is to be strictly construed and will not be extended by implication to include anything not clearly expressed in it and, if there is substantial doubt of its meaning, such doubt should be resolved in favor of free use of the property. The restriction does not in express terms forbid the erection of "an apartment house" or "a multiple family residence" nor limit the use to a "single family residence." The restriction limits the use of the access for "residential purposes." This phrase is not ambiguous and its ordinary and usual meaning as determined by the majority of courts is that the phrase "residential purposes" includes the use of the land for apartment buildings, duplexes, multi-family residences and single-family residences. The trial court so found, and in so doing, we rule that it followed the majority rule and correctly declared the law.

Affirmed.

All concur.