Michael P. **MULLIN** and, Sandra L. **Mullin,** and Bobby Overton and Boydine Overton, Plaintiffs–Respondents,

v.

**SILVERCREEK CONDOMINIUM, OWNER'S ASSOCIATION, INC., A Missouri Not for Profit Corporation, Defendant–Appellant.**

No. 27333.

Missouri Court of Appeals,
Southern District,
Division One.

July 7, 2006.

Randy S. Anglen, Branson, for Appellant.

Michael P. Mullin and Sandra L. Mullin, Pequot Lakes, MN, pro se.

Bobby Overton and Boydine Overton, Kissee Mills, pro se.

NANCY STEFFEN RAHMEYER, Presiding Judge.

This is an appeal from a judgment in a declaratory judgment suit brought by Michael and Sandra Mullin ("the Mullins") and Bobby and Boydine Overton ("the Overtons") against Silvercreek Condominium Owner's Association, Inc. ("Silvercreek"), which held that unit owners in Silvercreek are not restricted from renting their units on a nightly basis. The trial court found that Silvercreek's Declaration of Condominium and By–Laws ("the declaration") did not prohibit or restrict unit owners from renting or leasing their units on a daily or nightly term, that nightly rentals did not violate the declaration, or appear to be a violation of law. Silvercreek raises two points on appeal: first, that the declaration reserves the condominiums for single-family residential use, prohibiting businesses and activities that raise the insurance rates for the condominiums; and second, that the nightly rental activity was a violation of the zoning ordinances of the city of Rockaway Beach ("the City") and the declaration prohibits illegal use of the units.

Silvercreek Condominiums were built in 1993 or 1994. At the time they were constructed, a nightly rental program was advertised as being available. The Mullins purchased two Silvercreek Condominiums, Unit B–7 in January 2001 and Unit B–2 in October 2003. Before he purchased the units, Michael Mullin spoke with members of Silvercreek, including its president, and was told that nightly rentals were allowed.

Silvercreek's treasurer, Dean Walker,[1] advised the Mullins that two property managers were available and they hired Bobby Overton to manage the rental of their units since they lived primarily out of state. The Mullins began renting out the units on a nightly or short-term basis. In 2001, Mullin received a Uniform Project Questionnaire, signed by Walker and dated September 2002, which stated in paragraph 10 that the project permitted daily and weekly rentals. The Mullins and Overtons received a letter from Silvercreek's attorney in May 2003, which stated condominium units "are not to be used for business purposes" and stated that this could affect the use of the units for overnight, weekend and weekly rentals, but did not advise them to cease renting their units.

On June 23, 2003, however, the Mullins received a letter from Silvercreek's attorney, which stated they were in violation of article 6 of the declaration "by renting or allowing rental of [their] units for overnight rental." The letter notified them to "refrain from and cease the renting of such unit[s] for overnight tenancy." If the Mullins refused, Silvercreek claimed the authority to terminate their rights as condominium unit owners and/or seek a mandatory injunction to cure the restriction violation. The Mullins also received a copy of a letter from the City attorney to Walker, which stated that the nightly rentals violated the existing zoning ordinances of the property. The City attorney advised that "[i]f [Silvercreek] or the individual owners wish[ed] to continue using the property for nightly rentals, they should file a variance request with the Board of Adjustments."

---

1. Dean Walker was also the property manager during part of the time he was the treasurer for Silvercreek.

The Overtons were also informed that the short-term and nightly rental of their units was in violation of the declaration and the zoning ordinances of the City. Several unit owners, including the Mullins and the Overtons, applied for a variance, but they were denied. The Overtons and the Mullins (collectively, "Respondents") filed a petition for declaratory judgment on August 1, 2003, to determine the validity of section 6.2 of the declaration and the rights, obligations, and liabilities between the unit owners and Silvercreek.[2] They subsequently filed an amended petition on November 8, 2004.

Bobby Overton testified that he owned Unit B-6, purchased in 1999, and his wife owned Unit C-4, purchased in 2001. He also had a lease on Unit C-8, which he used for nightly rentals. The units had been rented on a short-term or nightly basis since their purchase. Overton testified that Walker often called him and inquired if he had vacancies in his units for rent. In order to rent out the units, Overton obtained a license from the City and he also collected and paid sales tax on all of the units used for short-term and nightly rentals, including the units he managed for the Mullins.

William E. Barrett[3] testified that he purchased Unit C-7 at the Silvercreek Condominiums, specifically "to put [it] on [a] nightly rental program," and was unaware of any prohibition against nightly rentals until he received notice from Silvercreek that nightly rentals were illegal. Barrett also testified that his wife's cleaning service did the initial construction cleanup for Silvercreek Condominiums and continued to clean at least three of the units in the nightly rental program.

Walker testified that, for at least the ten years he had owned a unit, individuals rented their condominiums on a nightly basis and until the spring of 2003, no official complaint was made regarding nightly rentals. Further, Silvercreek's records of annual meetings and Board of Directors meetings, together with other correspondence, indicated that a nightly rental program was in existence and accepted by Silvercreek.

Minutes from a Silvercreek Board of Directors meeting dated March 15, 2003, discussed a letter from the City attorney sent to inform Silvercreek that the nightly rentals violated their zoning code as Silvercreek Condominiums were zoned residential and nightly rentals were commercial. At the Board of Directors' meeting on June 21, 2003, the minutes included a proposal by the Mayor to arrange an agreement between the City, Silvercreek, and the owners of the nightly rentals. The owners of the nightly rentals did not respond. According to the minutes from the July 26, 2003 Board of Directors' meeting, Walker presented an overview of the events leading toward enforcement of the by-laws, together with a list of problems related to the nightly rentals that would be discussed at Silvercreek's annual meeting.

The declaration states in pertinent part:

### Article 6—Restrictions

In addition to any and all restrictions now existing against said property and all improvements now or hereafter constructed thereon, the use of condominium units and common elements (including restricted common elements) is hereby expressly restricted as follows:

6.1 Single Family Residential Use. All units and restricted common ele-

---

2. The Mullins and Overtons also brought a second count for misrepresentation; however, that count was dismissed prior to the trial.

3. Barrett did not join as a party to this suit.

ments shall be used, improved and devoted exclusively to residential use by a single family.

6.2 Business Use. No business, trade, occupation or profession of any kind shall be conducted, maintained or permitted on any part of the property, nor, without the prior written authorization of the Association, shall any "For Sale" or "For Rent" signs be displayed by any person, firm or corporation, bank, savings and loan association, lending institution, or insurance company who as holder of a deed of trust against any condominium unit acquired ownership thereof through foreclosure (or by deed in lieu of foreclosure), or the agent of any of them. Nothing in this Section 6.2 is intended to restrict the right of any condominium unit owner to rent or lease his (their) condominium unit from time to time or to engage any person, firm or corporation, to rent or lease said unit and provide maid and janitorial services therefore, nor shall any provision hereof be deemed to prohibit an owner from (i) maintaining his own personal professional library in his unit, (ii) keeping his personal business or professional records or accounts therein, or (iii) handling his personal business calls or correspondence therefrom, but all the express restrictions herein contained as to the use of displays and signs shall nonetheless be an remain in full force and effect and prohibits such activity in connection with any rental or lease or attempts to rent or lease.

. . . .

6.16 Lawful Use. No immoral, improper, offensive, or unlawful use shall be made on any part of the condominium. All valid laws, zoning ordinances, and regulations of all government bodies having jurisdiction over the condominium shall be observed. Any violation of such laws, zoning ordinances or regula-

tion shall be a violation of this declaration.

. . . .

11.2 Waiver. No covenant, restriction, condition or provision of this Declaration and in the Bylaws shall be deemed to have been abrogated or waived by reason of any failure to enforce the same at any time, irrespective of the number of violat [sic] one or breaches which may occur.

The parties stipulated that the Silvercreek Condominiums were at all times in an area zoned pursuant to section 410.030 of the City zoning ordinances and R–3 multiple-family dwelling district regulations. Section 410.030 of the ordinance contains the R–3 multiple family dwelling district regulations. Specifically, section 410.030(A) provides:

In the R–3 multiple family dwelling district no building or premises shall be used and none shall be hereafter erected or altered unless otherwise provided in this Chapter, and all buildings erected or altered shall conform to the following use, area and height regulations:

A. USE REGULATIONS

Permitted Uses:

1. Any use permitted in the R–2 two family dwelling district

2. Boarding houses and lodging houses

3. Multiple family dwellings

4. Planned Developments

5. Signs as permitted by current sign ordinance

6. Accessory structures incidental to the above uses and located on the same lot, not involving the conduct of a retail business, commercial business or repair business[.]

The ordinance defines multiple-family dwelling in section 400.040 as,

[a] building or portion of a building having suitable accommodations for three or more families, living independently of each other, who may or may not have joint uses of utilities, halls, yards, etc. This term includes premises occupied more or less permanently for residential purposes in which rooms are occupied in apartments, suites, or groups, such as apartments, dormitories, lodging houses, rooming houses, and all other dwellings similarly occupied. For purposes of this Title, auto courts, hotels, motels, motor courts, motor hotels, or tourist courts shall not be considered dwellings.

"Lodginghouse" is defined in section 400.040 as "[a] structure wherein lodging is provided for five or more individuals pursuant to previous arrangement and not open to transients." "Boardinghouse" is defined as "[a] building or place where, for compensation and by prearrangement for definite periods, table board is provided for five or more persons, but does not furnish meals to occasional or transient customers without previous arrangement."

■ The declaratory judgment comes following a court-tried case, and therefore the standard of review is derived from Rule 84.13(d).[4] This Court will affirm the judgment of the trial court unless the judgment (1) is not supported by substantial evidence, (2) is against the weight of the evidence, (3) erroneously applies the law, or (4) erroneously declares the law. *Lane v. Lensmeyer,* 158 S.W.3d 218, 225 (Mo. banc 2005). This Court is primarily concerned with the correctness of the trial court's result and not the route taken by the trial court to reach that result. *Bus.*

*Men's Assurance Co. v. Graham,* 984 S.W.2d 501, 506 (Mo. banc 1999).

The trial court found that "the [d]eclaration ..., particularly [a]rticle [s]ix, [p]aragraph 6.2, [did] not prohibit or restrict unit owners from renting or leasing their units on a daily or nightly term, and that 'nightly rentals' [did] not violate [the declaration], and [did] not appear to be a violation of law." In Point I,[5] Silvercreek posits that the trial court erred in declaring that nightly rentals of the condominiums did not violate the restrictive covenants in the declaration. Specifically, Silvercreek argues article 6, sections 6.1, 6.2 and 6.5 of the declaration are violated by the nightly rentals.

■ Section 6.1 of the declaration states that "[a]ll units and restricted common elements shall be used, improved and devoted exclusively to residential use by a single family." Section 6.2 states that "[n]o business, trade, occupation or profession of any kind shall be conducted, maintained or permitted on any part of the property[.] ... Nothing in this [s]ection 6.2 is intended to restrict the right of any condominium unit owner to rent or lease his (their) condominium unit from time to time[.]" To determine whether the trial court correctly found that the restrictive covenants in the declaration do not preclude "nightly rentals" of the units, this Court must interpret the covenants. This Court exercises *de novo* review in doing so. *Country Club Dist. Homes Ass'n v. Country Club Christian Church,* 118 S.W.3d 185, 189 (Mo.App. W.D.2003); *Mackey v. Griggs,* 61 S.W.3d 312, 315 (Mo.App. S.D. 2001).

---

4. All rule references are to Missouri Court Rules (2006), unless otherwise specified.

5. No brief has been filed by Respondents in this case. "While there is no penalty for not filing a brief, [this Court is] forced to adjudicate [Silvercreek's] claim[s] without the benefit of whatever argument, if any, Respondent[s] could have made." *Crump v. Dir. of Revenue,* 948 S.W.2d 434, 435 (Mo.App. S.D. 1997).

Restrictive covenants are not favorites of Missouri law. *Blevins v. Barry–Lawrence County Ass'n,* 707 S.W.2d 407, 408 (Mo. banc 1986). "[W]hen interpreting such covenants, courts should give effect to the intent of the parties as expressed in the plain language of the covenant; but, when there is any ambiguity or substantial doubt as to the meaning, restrictive covenants will be read narrowly in favor of the free use of property." *Id.* (*citing Shepherd v. State,* 427 S.W.2d 382, 386–87 (Mo.1968)). Although not favored, restrictive covenants are private contractual obligations, and therefore governed by the rules of construction applicable to any other covenants or contracts. *Wildflower Cmty. Ass'n, Inc. v. Rinderknecht,* 25 S.W.3d 530, 534 (Mo.App. W.D.2000). The intention of the parties comes from the plain language of the covenant, but must also be considered in light of the entire context of the instrument containing the covenant. *Andrews v. Metro. Bldg. Co.,* 349 Mo. 927, 163 S.W.2d 1024, 1028 (Mo.1942); *Stolba v. Vesci,* 909 S.W.2d 706, 708 (Mo.App. S.D.1995). An unambiguous restrictive covenant is not open to construction by the courts. *Mackey,* 61 S.W.3d at 315.

In the present case, it is clear that section 6.1 restricts unit owners from using their units, or the restricted common elements, for any purpose except residential use. The plain and ordinary meaning of "residential purposes" is "one in which people reside or dwell, or which they make their homes, as distinguished from one which is used for commercial or business purposes." *Blevins,* 707 S.W.2d at 408 (*quoting Shepherd,* 427 S.W.2d at 388). Stated another way, the unit owners' use of their units and restricted common elements must be for the purpose of residing or dwelling there, or in a manner making the realty a home, as distinguished from using the realty for commercial or busi-

ness purposes. *Shepherd,* 427 S.W.2d at 388; *Blevins,* 707 S.W.2d at 408. The question now becomes whether the trial court correctly applied the restrictive covenant found in section 6.1 in light of the entire declaration. Did the use restriction of section 6.1 prohibit or restrict unit owners from renting or leasing their units on a *daily or nightly term?* The question is important in view of the specific caveat contained in the next section, section 6.2, of the declaration, which states in pertinent part:

> Nothing in this [s]ection 6.2 is intended to restrict the right of any condominium unit owner to rent or lease his (their) condominium unit from time to time or to engage any person, firm or corporation, to rent or lease said unit and provide maid and janitorial services therefore. . . .

We believe the trial court correctly interpreted sections 6.1 and 6.2 as allowing nightly rentals. Although section 6.1 states the use is restricted to residential use by a single family, when it is read *in pari materia* with section 6.2, the restriction does not limit the condominium owners from renting the units from time to time. Given the admonition that restrictive covenants are not favorites of the law and the ambiguity in attempting to reconcile the two clauses, we interpret the covenant narrowly in favor of the free use of the property. *Daniel v. Galloway,* 861 S.W.2d 759, 761 (Mo.App. S.D.1993). The actions of the parties substantiate that interpretation of the covenants.

From the beginning of the purchase of the condominiums, the units have been rented on a short-term or nightly basis. Several witnesses testified at trial that nightly rentals were in existence since the inception of Silvercreek Condominiums and were an accepted practice. In addi-

tion to Mullin and Overton, William E. Barrett also testified that he purchased Unit C–7 at the Silvercreek Condominiums, specifically, "to put on the nightly rental program," and was unaware of any prohibition against nightly rentals until he received a notice from Silvercreek that nightly rentals had been determined to be illegal. Dean Walker testified that, for at least the ten years he had owned a unit, individuals were renting their condominiums on a nightly basis and until spring of 2003, no objections were made to nightly rentals. A Uniform Project Questionnaire concerning Silvercreek was admitted as evidence at trial. In relevant part, the questionnaire states that the Silvercreek Condominiums permit daily or weekly rentals.

In addition, minutes from a meeting of Silvercreek were admitted at trial and, in that meeting, the members discussed issues surrounding nightly rentals in a way in which it can be inferred short-term renting of units was an accepted practice. The minutes of the board on August 4, 2001, and September 15, 2001, indicate an acknowledgement that the units were used as nightly rentals. According to a letter from Dean Walker dated August 29, 2002, the By–Laws indicated that all rental applications, other than nightly, were to be approved by Silvercreek's Board of Directors and stated "If you rent a nightly for longer than a couple of weeks you may want to let me know." The Petition for Declaratory Judgment requested an interpretation of the declaration, particularly article six, sections 6.1 and 6.2.[6] We find no error in the trial court's determination that the declaration does not prohibit nightly rentals. Point I is denied.

Silvercreek claims in its second point that the trial court erred in ruling that the declaration does not restrict unit owners from renting their units on a nightly basis because such rental activity was a violation of the City's zoning ordinances. The trial court stated that nightly rentals "do not violate [the declaration], and do not appear to be a violation of law." The specific provision upon which Silvercreek relies in its argument is section 6.5, which states in relevant part: "Each owner shall maintain and keep his condominium unit in good order and repair and shall do nothing ... which would be in violation of the law." Silvercreek contends extensive evidence given at trial established that the nightly rental of the condominium units violates the City's zoning ordinances. Silvercreek is incorrect in that assertion.

■ What was established at trial is that the condominiums were zoned R–3 multiple-family dwellings. There was further evidence that hotels and motels were excluded from the definition of multiple-family dwellings under the City's zoning ordinances. Silvercreek did not present to the court evidence that the condominiums were in fact hotels and motels, nor did it establish that Respondents had violated the law with nightly rentals. Although Silvercreek presented a letter from the City's attorney indicating his position that Respondents were violating a city ordinance with nightly rentals, that letter does not in fact suffice to establish that Respondents have violated the law. We take the statement of the trial court in the judgment that nightly rentals do not appear to be a violation of law as just that, an ab-

---

**6.** In its argument, Silvercreek contends that section 6.5 was violated because the nightly rentals caused insurance rates to increase. Although the trial court did not address that specific issue in its judgment, substantial evidence supports a finding that the action of the owners did not *increase* the insurance rates because the nightly rentals had always taken place.

sence of proof that the nightly rentals do in fact "violate the law." Point II is denied. The judgment is affirmed.

PARRISH and LYNCH, JJ., concur.