

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| THE GOLF CLUB OF WENTZVILLE COMMUNITY HOMEOWNERS ASSOCIATION, | ) ) ) | No. ED108554 |
| | ) | Appeal from the Circuit Court |
| Plaintiff/Respondent, | ) | of St. Charles County |
| | ) | |
| v. | ) | |
| | ) | Honorable Daniel G. Pelikan |
| REAL HOMES, INC., | ) | |
| AMIRALI JABRANI, JANET JABRANI, | ) | |
| | ) | Filed: October 20, 2020 |
| and | ) | |
| | ) | |
| ROY JUMPS and STEPHANIE JUMPS, | ) | |
| | ) | |
| Defendants/Appellants. | ) | |

## Introduction

Real Homes, Inc., Amirali Jabrani, Janet Jabrani, Roy Jumps, and Stephanie Jumps (Appellants) appeal the judgment for declaratory and injunctive relief entered in favor of Respondent The Golf Club of Wentzville Community Homeowners Association (HOA) regarding the rental of Appellants' real properties in violation of a restrictive covenant in the Amended and Restated Declaration of Covenants, Conditions, and Restrictions (2000 Declaration). We reverse and remand.

Factual and Procedural Background

In 2018, the HOA filed suit against Appellants, alleging that the rental of their real properties within the subdivision constituted a violation of a provision in the 2000 Declaration prohibiting the use of properties for commercial or business purposes and allowing property to be used only for residential purposes. The HOA requested the court to declare the rights of the parties (Count I) and to issue a permanent injunction prohibiting Appellants from renting their homes (Count II). Both Appellants and the HOA filed motions for summary judgment, which were denied.

## Stipulated Facts

In anticipation of trial, the parties submitted statements of uncontroverted facts. The facts stipulated by the parties included the following:

The Golf Club of Wentzville Community is a subdivision of primarily single-family homes in St. Charles County. Appellants Roy and Stephanie Jumps own a home located at 79 Wessex Court within the subdivision, referred to in The Golf Club of Wentzville Community Plat Two as Lot 212. Appellants Amirali and Janet Jabrani and Real Homes own Lots 101, 105, 188, and 206 within the subdivision. All five real properties were acquired by Appellants subject to the HOA's 2000 Declaration.

The Jumps purchased Lot 212 in 2003 and resided at the home until 2010 when their daughter became a victim of a violent crime. The Jumps moved out of the subdivision to live closer to their daughter and began renting out Lot 212 as a single-family residence. From 2010, the Jumps rented out Lot 212 without objection by the HOA. The HOA issued pool passes for the Jumps' tenants on a yearly basis throughout this time and was otherwise aware that the Jumps were renting out their property, yet did not assert that such use was in violation of the 2000 Declaration. Similarly, the Jabranis and Real Homes purchased Lots 101, 105, 188, and 206 over

2

the course of several years from 2004 through 2007 and rented out the Lots from the time each Lot was purchased.

## Trial Court Proceedings

The matter was tried before the circuit court with the stipulations and live testimony of Roy and Stephanie Jumps, along with the deposition testimony of Cheryl Kross, a current officer of the HOA, and Debbie Lombardino, a former officer of the HOA.

Following a bench trial, the court held the 2000 Declaration prohibited Appellants from using their homes for any business or commercial purpose, including renting their homes, and issued a permanent injunction prohibiting Appellants from further renting their residences. In deciding whether the 2000 Declaration was violated, the trial court looked at a number of other provisions that referenced the words "tenants" or "rent" but ultimately determined those terms were left behind in error by the drafters of the 2000 Declaration. This appeal follows.

## Points on Appeal

Appellants claim the trial court erred by granting judgment to the HOA because the 2000 Declaration does not contain any restriction prohibiting lot owners from renting their homes in that the rental of a single-family residence does not amount to the home's use for a business or commercial purpose. Additionally, in a separate point, Appellants Amirali and Janet Jabrani and Real Homes claim the trial court erred by granting judgment in favor of the HOA because the 2000 Declaration is ambiguous and should have been interpreted in favor of free use of the property.

## Standard of Review

The standard of review of a declaratory judgment following a bench trial is derived from Rule 84.13(d): "The court shall review the case upon both the law and the evidence as in suits of

an equitable nature." Rule 84.13(d)(1). The judgment of the trial court will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Mullin v. Silvercreek Condominium Owner's Ass'n, Inc.,* 195 S.W.3d 484, 489 (Mo. App. S.D. 2006). "Where a misapplication of law is asserted, our review is *de novo*." *Tribus, LLC v. Greater Metro, Inc.,* 589 S.W.3d 679, 692 (Mo. App. E.D. 2019), quoting *Smith v. Great Am. Assur. Co.,* 436 S.W.3d 700, 704 n.3 (Mo. App. S.D. 2014). The interpretation of a restrictive covenant is a question of law and as such is to be reviewed *de novo* on appeal. *Mackey v. Griggs,* 61 S.W.3d 312, 315 (Mo. App. S.D. 2001).

Discussion

Appellants argue the 2000 Declaration does not prohibit lot owners from renting their homes because the rental of one's home as a single-family residence does not constitute a business or commercial purpose. Alternatively, Appellants Amirali and Janet Jabrani and Real Homes argue the language of the 2000 Declaration created an ambiguity that should have been resolved in favor of the free use of property.

"Restrictive covenants are not favorites of Missouri law." *Mullin,* 195 S.W.3d at 490, citing *Blevins v. Barry-Lawrence County Ass'n,* 707 S.W.2d 407, 408 (Mo. banc 1986). "Restrictive covenants on realty are strictly construed as the law favors untrammeled use of real estate." *Hammarstrom v. Samsel,* 114 S.W.3d 889, 890 (Mo. App. S.D. 2003), citing *Mackey,* 61 S.W.3d at 315. "The burden of proving that the use being made of real estate is in violation of restrictions is on the party seeking to enforce the restrictions." *Id.* at 890-91, citing *Daniel v. Galloway,* 861 S.W.2d 759, 761 (Mo. App. S.D. 1993). "Restrictive covenants will not be extended by implication to include anything not clearly expressed in them, and if there is

4

substantial doubt of their meaning, such doubt should be resolved in favor of the free use of the property." *Shepherd v. State ex rel. State Highway Comm'n,* 427 S.W.2d 382, 387 (Mo. 1968), quoting *Barnes v. Anchor Temple Ass'n,* 369 S.W.2d 893, 898 (Mo. App. St.L. 1963). "A restrictive covenant is not open to judicial construction if it is unambiguous." *Daniel*, 861 S.W.2d at 761, citing *Dierberg v. Wills,* 700 S.W.2d 461, 468 (Mo. App. E.D. 1985).

The Jabranis and Real Homes alternatively argue the language of the 2000 Declaration created an ambiguity that should have been resolved in favor of the free use of property. While we agree any ambiguities in restrictive covenants are to be resolved in favor of the free use of realty, the law in Missouri indicates that the phrase "residential purposes" is not ambiguous. *Shepherd,* 427 S.W.2d at 390. "A restrictive covenant is not open to judicial construction if it is unambiguous." *Daniel,* 861 S.W.2d at 761, citing *Dierberg,* 700 S.W.2d at 468. The unambiguous language of the 2000 Declaration interpreted according to its plain meaning does not prohibit Appellants from renting their homes for single-family use. *Shepherd,* 427 S.W.2d at 388, quoting *Jernigan v. Capps,* 45 S.E.2d 886, 890 (Va. 1948).

Here, the primary issue was whether Article VIII, Section 1(A) of the 2000 Declaration – "No Lot shall be used for any business or commercial purpose, and each Lot shall be used solely for residential purposes" – prohibited Appellants from renting their properties for single-family use. The relevant provisions of the 2000 Declaration are as follows:

**Article VIII – Covenants and Restrictions**

**Section 1.** *Creation of General Covenants and Restrictions.* Each Owner of a Lot by acceptance of a deed therefor, whether or not it shall be so expressed in such deed, covenants and agrees to the following terms, provisions, covenants and restrictions which run with the land and are perpetual and appurtenant to the Lots:

(A) **No Lot shall be used for any business or commercial purpose, and each Lot shall be used solely for residential purposes** except (i) for use pursuant to home occupations not in violation of any zoning ordinances affecting the Subdivision, and

5

(ii) Lots or portions of Lots may be used by Declarant or any Builder for temporary offices, display or model homes and/or entrance monuments, provided however, that in no event shall any Lot be conveyed or transferred in any manner to a civic, religious, charitable or fraternal organization, or any person or persons other than for the exclusive use of an individual family.

\* \* \* \* \*

(K) No signage of any kind shall be displayed to the public view on any Lot, except (i) one sign of not more than five square feet advertising the Lot for sale or rent….

\* \* \* \* \*

(V) No Owner shall perform any act upon such Owner's Lot or within such Owner's Dwelling or permit any act to be performed in contravention of, and each Owner shall comply with, and cause such Owner's family, guests, tenants, invitees to comply with, the provisions of this Declaration, the Bylaws and the Articles of Incorporation of the Association, as any of the same may be amended from time to time.

The 2000 Declaration does not define "business purposes," "commercial purposes," or "residential purposes."

The Supreme Court of Missouri has considered identical language in similar restrictive covenants and determined that the plain and ordinary meaning of "residential purposes" in restrictive covenants as applied to the use of a building is "one in which people reside or dwell, or in which they make their homes, as distinguished from one which is used for commercial or business purposes." *Shepherd,* 427 S.W.2d at 388; *see also Blevins,* 707 S.W.2d at 408; *Mullin,* 195 S.W.3d at 490. In *Shepherd*, the Supreme Court found that "restrictions built around the terms 'residence' or 'residential purposes,' without more, merely limit the use of the property to living purposes . . . and do not exclude apartment houses." *Id.* at 389, quoting *Baker et ux. v. Smith et al.,* 47 N.W.2d 810, 812 (Ia. 1951).

Accordingly, absent express language within the restrictive covenant indicating otherwise, the rental of residential property to tenants for living purposes constitutes a "residential purpose." *Id.* at 389-90. Given the stipulated facts and the testimony in the present

6

case, it is clear Appellants were using the properties for residential purposes as each property was being rented solely as a single-family residence and used only for living purposes.

Moreover, the 2000 Declaration contains language clearly expressed in Article VIII, Sections 1(K) and 1(N) acknowledging Lot owners' ability to rent their homes. These provisions read as follows:

> (K) No signage of any kind shall be displayed to the public view on any Lot, except (i) one sign of not more than five square feet advertising the Lot for sale *or rent*….
>
> \* \* \* \* \*
>
> (V) No Owner shall perform any act upon such Owner's Lot or within such Owner's Dwelling or permit any act to be performed in contravention of, and each Owner shall comply with, and cause such Owner's family, guests, *tenants*, invitees to comply with, the provisions of this Declaration, the Bylaws and the Articles of Incorporation of the Association, as any of the same may be amended from time to time.
>
> (all emphasis added).

"Terms used in restrictive covenants should be applied in accordance with their plain, everyday or popular meaning. The language used in the entire instrument should be considered, however, and not just one clause." *Daniel,* 861 S.W.2d at 761 (citations omitted). The trial court inferred based on speculations of the HOA that the words "rent" and "tenants" in Sections 1(K) and 1(V) were left behind in error by the drafters of the 2000 Declaration. However, no substantive evidence was presented by the HOA in support of this contention. The HOA merely speculated that because the 2000 Declaration contained certain provisions allocating rights to and requiring the compliance of "Owner's family, guests and invitees" without reference to "tenants," the inclusion of "tenants" in another provision was left behind mistakenly and was superfluous. The trial court erred in this respect as restrictive covenants such as the 2000 Declaration are to be read narrowly in favor of the free use of property and "not to be extended

7

by implication to include anything not clearly expressed in them." *Id.* at 765, citing *Vinyard v. St. Louis Cty.,* 399 S.W.2d 99, 105 (Mo. 1966); *see also Shepherd,* 427 S.W.2d at 390.

Section 1(A), read *in pari materia* with Sections 1(K) and 1(V), indicates that the 2000 Declaration does not prohibit the rental of homes within the subdivision. On the contrary, these provisions clearly acknowledge the ability of Lot owners to rent their homes. The 2000 Declaration in its entirety contains no provisions, express or otherwise, prohibiting the rental of homes and, other than in Sections 1(K) and 1(V), makes no reference to home rentals whatsoever.

"The burden of proving that the use being made of the property is in violation of the restrictions is on the party seeking to enforce them." *Id.* at 761, citing *Brasher v. Grove,* 551 S.W.2d 302, 303-04 (Mo. App. Spr. 1977). The evidence presented by the HOA effectively contradicted its position that the 2000 Declaration prohibited Lot owners from renting their homes and that the terms "rent" and tenants" in Sections 1(K) and 1(V) were left behind in error by the drafters of the covenant.

Cheryl Kross, a member of the HOA's board of directors, testified via deposition that no language in the 2000 Declaration other than the provision in Article VIII, Section 1(A) limits the ability of homeowners to rent or lease their homes and the 2000 Declaration does not contain any language that clearly prohibits homeowners from doing so. Debbie Lombardino, a former member of the HOA's board of directors, testified via deposition to the same effect: "I don't believe there's any provision that says specifically a home cannot be rented, those words." Further, according to the deposition testimony of Kross, in 2017 the HOA drafted and adopted the Second Amended and Restated Declaration of Covenants, Conditions, and Restrictions (the 2017 Declaration) to amend the 2000 Declaration. Kross testified during her deposition that

8

the purpose of the 2017 Declaration was to include a provision that clearly and expressly prohibited home rentals.

None of the evidence offered by the HOA supports its contention that Appellants were in violation of the 2000 Declaration. The HOA failed to satisfy its burden of proof and judgment should not have been entered in its favor.

Conclusion

The trial court erred in holding that Appellants violated Article VIII, Section 1(A) of the 2000 Declaration and finding that the rental of homes to third parties as single-family residences constituted a business or commercial purpose. The trial court's judgment in favor of the HOA for declaratory and injunctive relief is reversed and remanded for further proceedings consistent with this opinion.

_Sherri B. Sullivan_
SHERRI B. SULLIVAN, J.

Robin Ransom, P.J., and
Lisa P. Page, J., concur.